Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of THERESA VISSAGGIO, Respondent, for Compensation under the Workmen's Compensation Law, *v.* NEW YORK CONSOLIDATED RAILROAD COMPANY, Employer and Self-Insurer, Appellant.

Third Department, May 7, 1919.

**Workmen's Compensation Law — conduct of investigation — misconduct of deputy commissioner.**

An award under the Workmen's Compensation Law reversed because of the sarcasm, insinuations, ridicule and intimidation indulged in by the deputy commissioner who conducted the investigation.

APPEAL by the defendant, New York Consolidated Railroad Company, from awards of the State Industrial Commission, entered in the office of said Commission on the 29th

Third Department, May, 1919. [Vol. 188.

day of October, 1918, and the 26th day of November, 1918, respectively.

*George D. Yeomans* [*Harold L. Warner* of counsel], for the appellant.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

COCHRANE, J.:

This award must be reversed because of the misconduct of the deputy commissioner who conducted the investigation. The claimant was employed to clean car windows. The alleged accident was the fall of a window on the little finger of her left hand causing subsequent infection. The defense was that the infection was caused by a brass ring worn by her which scratched or injured a pimple on her finger. The claimant testified she never had a ring on that finger. She further testified that two women were working with her at the time of the accident. These women were called as witnesses by Mr. Isaacsen, the attorney of the appellant. One of the women testified that the claimant had a pimple on her little finger; that she had a brass ring on the finger which started the blood poisoning. She was then subjected to a searching and exhaustive cross-examination by the deputy commissioner in the course of which the record discloses the following, the questions being asked by him: " Q. What kind of a ring was it? A. A little brass ring. Q. You have been watching that ring? You have seen the ring a hundred times on her? A. I never watched it. Q. How many times did you see it? A. Once or twice I noticed it. Q. You know the ring. Describe the ring. A. I cannot describe it. She had a ring on her finger. Q. How do you know it wasn't a piece of wire? A. She told me. It was a little ring. Q. Was it like a piece of wire? A. No wire — a little bit of a ring. Q. 'A little bit of a ring.' What do you mean? A woman knows all about rings. I am not talking to a man. They are fond of jewelry. You know what kind of a ring it was if you know at all. A. A little bit of a ring. She told me it was brass herself. Q. What kind of a ring was it? Was

it a ring like that (shows ring on his finger)? A. No, sir. Q. Did she ever show it to you and say, ' Look at my ring?' A. She never showed it to me like that. She was working and I noticed it on her finger. We are always busy working on subway cars. Commissioner Curtis: You evidently worked a whole lot from what you say if she told you all her business. The Witness: We never talk about rings. She told me the ring scratched that pimple. Commissioner Curtis: You just testified that she told you all about her business. The Witness: Not about the rings. Commissioner Curtis: You first said she told you all about it and you told me the reason why she told you — she told you all her business and that's how you knew. Is that what you said? The Witness: We don't talk about rings. She told me the ring scratched her pimple. By Commissioner Curtis: Q. You are sure of that part? A. Yes, sir. Q. What makes you so sure? A. I am sure of that. Q. Why? A. Because she told me. Q. Who was talking to you to make it so fresh in your memory that she told you about this ring? Did she tell you about her home affairs? A. Sometimes. * * * Q. When did she tell you that the ring scratched her finger? A. She told me some time while working together. Q. When? A. I cannot remember the date. The 17th she first complained about her finger. Q. The 17th of August? A. Something like that. Q. Who told you the 17th? Where did you get this information? You are unable to remember any other date only the 17th. That has been instilled in you very thoroughly. How is it you know the 17th? A. I didn't know it would be a case of it. * * * Q. Do you remember the date she told you she was injured? A. The 17th. Commissioner Curtis: God! You will stick by the 17th. You have it solid in your memory. Witness: Yes, sir. Commissioner Curtis: You don't know anything about anything else. * * * Q. You never saw a window fall on the subway cars? A. No, sir. They cannot fall. Commissioner Curtis: Then you haven't had the same experience I have. Mr. Isaacsen: On the Brooklyn Rapid Transit? Commissioner Curtis: Are they different? Mr. Isaacsen: Very much different. Commissioner Curtis: That's one good thing the B. R. T. has — the windows don't drop. * * * Q. Did you ever have

any trouble with this woman? A. No, sir, always friendly, but once sweeping — Commissioner Curtis (interrupting) (addressing Interpreter Vioni): Ask her did she ever have an argument? The Claimant: In one week I make $18.60 and this woman was jealous because I made more than they did. Commissioner Curtis: I thought there was something." At the conclusion of the testimony of this witness she was dismissed with this comment by the deputy commissioner: " She knows all about the B. R. T.— only the schedule; nobody knows that."

The other woman who was present at the time of the alleged accident was then called as a witness and testified to an admission by the claimant that her finger was hurt by the ring. In the course of her testimony she stated that the claimant had not asked her to testify in her behalf. This bit of testimony being somewhat favorable to the claimant drew from the deputy commissioner the comment: " You are telling the truth." He then took the witness in hand and his examination not developing from her responses in each instance favorable to the claimant he apparently changed his views about the veracity of the witness as his subsequent comments indicate. In the course of a lengthy examination conducted by the deputy commissioner in the same spirit as characterized the examination of the former witness the following occurred: " This woman says on the 17th you cleaned them. A. She has better dates than I have. Commissioner Curtis: Maybe she has reason to have better dates. She has the injury. Maybe if you had the injury you would have better dates. * * * Q. You had some trouble with her? A. She wanted to do the clean work and wanted us to do the dirty work. Q. You had a little spat with her every day? A. Not exactly. Q. There was always a feeling between you that she wasn't doing this or that right? A. Not a bad feeling. Commissioner Curtis: Not very bad. Mr. Isaacsen: I submit that she said 'no bad feeling between us.' You said ' Not very bad.' I don't believe you should put words in her mouth. Commissioner Curtis: She has been very well schooled. Even in testifying she is not holding to her own story because she doesn't know whether she cleaned windows on that day or not. From the start she has shown

there is a feeling between the two women. Mr. Isaacsen: I
don't think you can show any prejudice — Commissioner
Curtis (Interrupting): She stated here that this woman
wanted her to do the dirty work. * * * Q. What was
the size of the ring in your opinion? You are a woman that
knows about the wedding rings used these days. Was it the
size of the wedding ring used today as a rule? A. There
was the hand right here (indicating) — Q. (Interrupting):
Was it gold or brass? A. I think it must be mixed. Com-
missioner Curtis: You are a little better. Mr. Isaacsen: She
is not a jeweler. How does she know? She is testifying to
the best of her knowledge. Commissioner Curtis: Then you
are acknowledging that your other witness didn't know."

The claimant had been treated by a nurse in the employ
of the appellant. A discussion arose at the hearing as to
whether the nurse should be produced. It seemed to be
the understanding of the attorney for the appellant that she
was not at that time in the employ of the appellant. The
attorney after stating that the nurse did not witness the
accident announced that he would rest the case without her
testimony. The record then discloses the following: " Com-
missioner Curtis: The carrier rests on the evidence already
presented. This woman, the claimant, mentions a nurse
who treated her and who is now in the employ of the company,
to show she had an accident and that she treated her for same —
Mr. Isaacsen: (Int'g): I object to that. Commissioner
Curtis (Cont'g): And the company has refused to produce
her here as a witness and on those grounds I make the award
as I am of the firm opinion that the testimony presented isn't
facts. Mr. Isaacsen: I now ask that the company be given a
chance to bring this woman, Mrs. Wait. There is nothing in
the testimony to show that this claimant met with an accident
and the words were put in by yourself — Commissioner
Curtis (Int'g): This woman testified that the nurse treated
her immediately after she came out. The only conclusion
that can be formed is that the case isn't being produced here.
Mr. Isaacsen: I ask for an adjournment. Commissioner
Curtis: I wanted to give you an adjournment and you didn't
want it. You are trying to pull over something — Mr.
Isaacsen: I am not trying to pull anything over and you well

know it.   Commissioner Curtis: The minutes will show that —
(At this point Mr. Isaacsen threw his papers on the table and
left his chair).   Commissioner Curtis: Don't throw your
papers down like that.   You are not worrying me any.   We
have your statement there that you would stand on the testi-
mony — that you will rest on the testimony presented.
Mr. Isaacsen: From what you said I am asking that the case
be adjourned one week.   Commissioner Curtis: This same
witness that you claim you were to have here is still in your
employ and you have failed to produce her.   Mr. Isaacsen:
I didn't know she was still in our employ.   Commissioner
Curtis: This woman claims to have seen her there.   Mr.
Isaacsen: I think this witness is mistaken.   Commissioner
Curtis: That's the only thing in which she is mistaken."
The hearing was then adjourned one week.   On the adjourned
day the nurse was produced as a witness and testified that she
treated the infected finger and that the claimant told her that
it was caused by the ring and said nothing to the effect that a
window had fallen on the finger.   The witness produced a
book in which she kept a record of serious cases.   It con-
tained an entry made at the time when she treated the claimant
appearing in its regular order in the book and containing the
statement:  " Infection on small finger, left hand due to tight
ring.   Wet dressing of opium and lead.   Sent to Dr. Gibson
to have lanced," and dated August 21, 1918.   During the
examination of this witness the deputy commissioner turned
to the report of Dr. Gibson made September 20, 1918, in which
he stated that first treatment was rendered by him on August
twenty-second and that the claimant stated to him that a car
window had fallen on her hand.   The deputy commissioner com-
mented on what apparently seemed to him a singularity that the
claimant on August twenty-first should tell the nurse that the
injury was caused by the ring and that the doctor in his report
of September twentieth should say that the claimant had told
him that the injury was caused by the fall of a window.   The
inconsistency in the two statements seemed to impress the
deputy commissioner as being greatly to the disparagement of
the nurse, entirely overlooking the fact that the statement to
the doctor was the one subsequently made and that it might
have been an afterthought by the claimant and that in any

event it was her self-serving declaration and according to the most elementary rules of evidence tended in no degree to discredit the nurse. We.quote again from the record: " Commissioner Curtis: Just what does Dr. Gibson mean there on the 22nd, the next day? Why don't you add something in that record? Mr. Isaacsen: What do you want me to do with this report of Dr. Gibson's? Commissioner Curtis: I just want to know why there is such a change in the two reports. Mr. Isaacsen: I don't know, how should I? Commissioner Curtis: Well, there it is. Mr. Isaacsen: You accept one part of the testimony but won't accept the other which is sworn testimony. I can't do anything more than to bring the witnesses here and testify. I only can do my duty to my company and I tried to do that; I presented the evidence and testimony. Commissioner Curtis: I am not interested in your dealings with your company. I am here to deal out compensation." At the conclusion of the hearing the deputy commissioner announced his decision in favor of the claimant. The attorney for the appellant announced his intention to appeal which drew from the deputy commissioner the following statement: " You might enter in the minutes that I did not place credence in the witnesses that testified, as their mode of testifying was not satisfactory."

We have not attempted to reproduce all that was said by the deputy commissioner. The record is replete with improprieties and we may regretfully add that numerous records have come under our observation which have been marred by the indiscretions of this official. The statute (Workmen's Compensation Law [Consol. Laws, chap. 67; Laws of 1914, chap. 41], § 20, as amd. by Laws of 1917, chap. 705), gives to any party a right to present evidence and to be represented by counsel. Clearly witnesses and counsel are entitled to respectful and courteous treatment. Sarcasm, insinuations, sneers, ridicule and intimidation, all of which were indulged in by the deputy commissioner, have no place in the administration of justice. His attiude was not that of an impartial judicial officer patiently attempting to develop facts regardless of which side might be helped by such facts. His attitude was rather that of a belligerent and aggressive partisan attorney seeking to develop only such facts as were favorable to the party he represented.

In any well-conducted court such comments and statements as were indulged in by the deputy commissioner would not be tolerated on the part of an attorney. If he persisted therein after admonition he would subject himself to discipline. The indulgence in such conduct by a presiding officer clothed with judicial or quasi judicial functions and who is amenable for his own conduct to no one in the tribunal over which he presides and in whose keeping is the dignity of such tribunal and the impartial administration of justice is particularly reprehensible and might well be characterized in severer terms. If an attorney would be subject to discipline for similar conduct what can be said of a presiding officer who takes advantage of his official position to indulge in methods which should not be tolerated in another? His publicly expressed intimations repeatedly indulged in at the very time that the witnesses were giving their testimony that they were not telling the truth constituted gross improprieties. It is conceivable that during a judicial hearing evidence of perjury on the part of a witness might be so obvious as to call for immediate action. But such was not the case here. Such statements and comments on the testimony as it is proceeding from the witnesses excite either embarrassment or hostility in the witness according to temperament and is not productive of that mental serenity which is essential to an accurate statement of the knowledge which the witness possesses. Ofttimes witnesses testifying in public are affected by a natural nervousness or stage fright. This is enhanced by such treatment as was accorded them in this proceeding particularly when it comes from the judge or presiding officer. Such witnesses need reassurance rather than harshness. The effort should be to get from them as naturally as possible the testimony which they have it in their minds to give. Methods which disconcert or humiliate or intimidate witnesses are sometimes reflected in the distortion of their testimony. They do not give it as they would if their minds were at ease. The mental disturbance of the witnesses is naturally greater when it is produced by the presiding officer rather than by an attorney. We cannot be sure in this case that the witnesses have expressed themselves as they intended to do. They were subjected to a species of duress or intimidation which may well have had the effect of

unconsciously suppressing what was in their minds to testify or discoloring that which they did testify.

It is true that this award appears to have been made by three of the Commissioners.  But they did not take part in the development of the testimony and we have no means of knowing how much personal consideration they gave to the case.   The statute (§ 65) provides that the award of a deputy commissioner only needs the approval and confirmation of the Commission to make it the award of the Commission. It is a fundamental and primary right of every party to have a fair and impartial hearing and that the person who acts as his judge or arbiter shall be without prejudice or bias.   More particularly should this right be guarded under a statute where the determination of the judge or arbiter in respect to a question of fact is final and cannot be reviewed.   We make no criticism and intend no reflection on any of the Commissioners. We express no opinion as to the merits of this claim.   The claimant may or may not be entitled to an award.   What we hold is that the remarks and comments by the deputy commissioner manifested bias and prejudice against the appellant and that his treatment of the witnesses and manner of examining them may have been productive of the suppression or incomplete development of their testimony constituting legal error and that the appellant has not had a fair hearing and has been deprived of its day in court.

The awards should be reversed and the proceeding remitted to the Commission for another hearing.

All concurred.

Awards reversed and proceeding remitted to the Commission for another hearing.